UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WARREN WILDER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-1277 |
| | § | |
| TITAN CHEMICAL CORP. BHD, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

**I.     INTRODUCTION**

The plaintiff, Warren Wilder, sued Titan Chemicals Corp, BHD ("Titan Chemicals") and Titan Petchem (M) SDN BHD ("Titan Petchem") (collectively, the "defendants") for breach of an alleged employment agreement that arose out of the board of directors' minutes of Titan Chemicals. Previously in 2008, the plaintiff had entered into a five year Employment Agreement with Titan Petchem ("the Agreement"). Under the terms of the Agreement, the plaintiff was employed as Managing Director of "the Company", a term that he contends meant that Titan Chemicals was also his employer. He held the position as Managing Director until November of 2010, when he resigned and Honam Petrochemical Corporation ("Honam"), acquired controlling ownership of both Titan Chemicals and Titan Petchem. The plaintiff claims that in July of 2010, a new contract of employment was consummated that superseded and/or modified his 2008 Agreement. According to the plaintiff, the July 2010 contract of employment is the subject of this suit. After receiving the evidence offered by the plaintiff and after the plaintiff rested his case, the defendants presented their motion for judgment as a matter of law, pursuant to Federal

Rules of Civil Procedure, Rule 50(a).  The Court heard arguments from counsel for both parties and determines that the defendants' motion for judgment as a matter of law should be granted.

**II.    CONTENTIONS AND BACKGROUND**

The dispute before the Court requires the Court to determine whether a contract was consummated between the plaintiff and Titan Petchem and/or Titan Chemicals by the Board minutes of Titan Chemicals in 2010.  Assuming that a contract was consummated, the jury would then determine whether that contract was breached by termination resulting in damages.

The plaintiff contends that the defendants breached his 2010 employment agreement by terminating him and by failing to pay the salary and benefits guaranteed under the terms of that alleged employment agreement.  Reflecting back to 2008, the plaintiff contends that the defendants recruited and hired him in July of 2008 in Houston, Texas to be the Managing Director and Chief Executive Officer of Titan Petchem Chemicals with duties for both Titan Chemicals and Titan Petchem as well as other subsidiaries of the two companies. He claims that he negotiated the terms of his employment with both Titan companies.  An Employment Agreement dated July 10, 2008, states the terms of the plaintiff's employment, including his duties, the duration of his employment and his compensation and benefits.

Under the 2008 Agreement, the plaintiff's compensation included an annual salary or base pay, an annual short-term bonus payment, a monthly completion gratuity, housing allowance, insurance, and other benefits. He was also to be paid an annual equity award.  In spite of the evidence that shows that only Titan Petchem was the signatory to the Agreement, he contends that he worked for both Titan companies and was paid by both Titan companies.  The evidence shows, however, and the plaintiff now concedes that, in fact, he was employed only by

Titan Petchem even though his duties included oversight of Titan Chemicals and other Titan subsidiaries.

In 2010, Honam– a South Korean petrochemical company – entered into negotiations with Titan Chemicals to acquire controlling ownership of both Titan companies. A Share Purchase Agreement was signed on July 16, 2010, and the sale closed several months later on November 10, 2010. The plaintiff was given the primary responsibility to implement the Share Purchase Agreement and close the sale. Both Titan and Honam were concerned with ensuring management stability during negotiations. Therefore, they encouraged upper management not to seek other employment during the months before the sale closed and additionally proposed new employment contracts for key management personnel, including the plaintiff. In fact these proposals were presented to and approved by the Titan Chemicals' Board of Directors.

The proposal, that was approved by the Board, included continuous employment for at least 24 months. If, however, Titan Chemicals opted to terminate the employment agreement early for any reason other than gross neglect, payment of the total remuneration for the remaining portion of the 24 months was due. In the plaintiff's case, he was also to be paid a "change in control" payment, described in the 2008 Agreement, irrespective as of whether his employment continued under the terms proposed of the Board of Directors.

Titan Chemicals' Board of Directors approved the proposed contract terms on July 15, 2010. The terms of the proposal were acceptable, generally, to the plaintiff and he preceded to have Titan's general counsel prepared written agreements for key management personnel, including himself. He then executed the Board's offers in behalf of the Titan companies for all key personnel except himself. The signature of the Chairman of the Board of Titan Petchem was necessary to consummate the plaintiff's contract. The Chairman of the Board failed and/or

refused to sign the document(s) necessary to consummate a new agreement between Titan Petchem and the plaintiff. The plaintiff now sues for breach of contract.

### III. STANDARD OF REVIEW

To prevail on a breach of contract claim under Texas law, proof of the following essential elements is required: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.-Houston [14th Dist.] 2005, pet. denied)). In order to be considered valid and binding, a contract must contain: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.- Ft. Worth 2004, pet. denied).

"The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and how they acted, not on their subjective state of mind." *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 589 (Tex. App.-Austin 2007, pet. filed) (citing *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.-San Antonio 1999, pet. denied)). Thus, the ultimate issue of "[w]hether a contract exists involves both questions of fact—such as the intent of the parties—and questions of law—such as whether, the facts as found constitute a contract." *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir. 1991).

Texas case law establishes that an oral promise, including one of employment, which is not performable within one year from the date of its making, is barred by the statute of frauds.

*See Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403, 407 (Tex. App.-Beaumont 1987, writ ref'd n.r.e.) ("The promise of lifetime employment, or the promise of permanent employment, or the promise of employment until the age of 65, is that type of employment agreement or contract that must be reduced to writing to be enforceable."). More specifically, "[a]n agreement that is not to be performed within one year from the date of its making must conform to the statute of frauds, i.e., must be in writing and signed by the person to be charged with the promise." *Bledsoe v. Worldwide Flight Servs.*, No. 4:00-CV-1826-A, 2001 WL 1167363, * 2 (N.D. Tex., Sept. 27, 2001) (citing Tex. Bus. & Com. Code § 26.01)).

The vagueness of an alleged oral promise will not suffice to establish a definite term of employment. *See, e.g.*, *Montgomery Country Hosp. Dist. v. Brown*, 965 S.W.2d 501, 503 (Tex. 1998) ("[c]ourts must distinguish between carefully developed employer representations upon which an employee may justifiably rely, and general platitudes, vague assurances . . . and indefinite promises of continued employment" (internal citations omitted)). "In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding these communications." *Palestine Water Well Servs., Inc. v. Vance Sand & Rock, Inc.*, 188 S.W.3d 321, 325 (Tex. App.-Tyler 2006, no pet.) (citing *Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex. App.– Tyler 2004, pet. denied)).

IV.  DISCUSSION AND ANALYSIS

Federal Rules of Civil Procedure, Rule 50(a)(1), provides that after a plaintiff has been heard on his claim(s), the Court upon motion, may determine whether the evidence is legally sufficient for the case to proceed to a jury. In the case at bar, the defendants filed a Rule 50(a)(1) motion and presented oral arguments in support of that motion after the plaintiff rested. Counsel for the plaintiff, responded to the defendants' motion and arguments on the record.

In five contentions, the defendants argue: (1) the Titan Chemicals' Board of Directors' minutes do not constitute a legal offer that the plaintiff could orally accept as its terms would violate the Statute of Frauds; (2) the Board minutes were not signed, there is no evidence of Board practices in this respect, therefore, elevating the minutes to contract status violates the Statute of Frauds; (3) assuming that the Board minutes constitute an offer, that offer was not communicated to the plaintiff, *i.e.,* nothing was conveyed. Moreover, the plaintiff was terminated from his 2008 Agreement with Titan Petchem; nor was that contract modified; and (5) there is no evidence that Titan Chemicals modified the plaintiff's 2008 Agreement with Titan Petchem when it entered into a management stability agreement with Honam. As to each of the defendants' contentions, the plaintiff presents an opposing argument.

The evidence is undisputed that Titan Chemicals was not a party or a signatory to the plaintiff's 2008 Agreement. The evidence also shows that neither the plaintiff nor Titan Petchem were parties to the negotiations or consummation of the Share Purchase Agreement with Honam. Finally, the evidence demonstrates that neither Honam, Titan Chemicals or Titan Petchem entered into a written contract of employment with the plaintiff.

Under Texas law, a valid and binding agreement requires, among other things, a showing that an agreement was executed and delivered expressing the intent of the parties that was mutually binding. *Shankle*, 138 S.W. 3d at 481. This intent and mutuality – meeting of the minds – is governed by an objective standard, not the subjective state of mind of one of the parties. *West Mgmt. Holdings, Inc.,* 219 S.W. 3d at 589.

The plaintiff's evidence fails to show a meeting of the minds between himself, Titan Chemicals or Titan Petchem. In fact, the evidence reveals the contrary. When the plaintiff learned the contents of the Board minutes, he promptly proceeded to have contracts of

employment drafted for himself and key management staff. The evidence also shows that when Titan counsel presented the terms of the employment contracts to the plaintiff for key employees, he executed the agreements in behalf of Titan Petchem after the employees signed their respective documents. However, the plaintiff did not execute a similar document but drafted a counteroffer by making changes to the terms of his 2008 Agreement. That proposal was never executed by the Chairman of the Board. Instead, the plaintiff resigned his employment with Titan Petchem, resigned from the Board of Directors for the Titan subsidiaries, accepted a consulting agreement with Titan Petchem, and request and received a severance package from Titan Petchem. *See* [Exhibits Dx 1, 2 and 7]. Finally, even if the plaintiff's claim that an agreement was consummated, that agreement violates the Statute of Frauds. *See* Tex. Bus & Comm. Code § 26.01(a)(1), (2). Therefore, the defendants' motion for judgment as a matter of law is granted.

It is so Ordered.

SIGNED on this 29th day of April, 2015.

_____
Kenneth M. Hoyt
United States District Judge